# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLIED WORLD INS. CO., | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LAMB MCERLANE, P.C., | : | No. 17-2878 |
|     Defendant. | : | |

## Memorandum Opinion

Plaintiff Allied World Insurance Company moves for judgment on the pleadings, seeking a declaration that it is not obligated to defend or indemnify Defendant Lamb McErlane, P.C., for a $557,001 judgment because the claim was not made during the period covered by the Allied World insurance policy. See Mot. for J. on the Pleadings (doc. 15) at 2; Reply Br. (doc. 21) at 1.

I will grant Allied World's motion.

## I. Standard of Review

Allied World must clearly establish that there are no material issues of fact, and it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 12(c); Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). I must view the facts in the light most favorable to Lamb McErlane and accept its well-pleaded allegations as true. Id. I may consider "only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents" that serve as the basis of a claim. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); see also Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (Fed. R. Civ. P. 12(c) motions are reviewed like 12(b)(6) motions).

## II. Factual Background

The Lamb McErlane law firm represented an executor in estate proceedings in the Chester County Court of Common Pleas from 2006 to 2017. See Compl. at ¶ 8. In March 2013,

the executor filed initial accounts documenting administration costs he had charged to the estate, including legal fees associated with Lamb McErlane's representation. Id. at 10, Ex. D at 73. In April 2013, the estate beneficiaries objected to the costs, alleging the executor had mismanaged estate proceedings and paid excessive legal fees. Id. at ¶ 10, Ex. A.

At the court's request, the beneficiaries submitted a letter in May 2015 outlining the issues they planned to raise. Id. at ¶ 11. This letter alleged Lamb McErlane had performed "flawed and inadequate" work, "grossly mismanaged" the federal tax filing process, and negligently "fail[ed] to check a box," leading to a tax penalty in excess of $500,000. Id., Ex. B ("May 2015 Letter") at ¶¶ 2, 7, 9. The beneficiaries requested the court surcharge the executor and Lamb McErlane for the losses caused by their breach of fiduciary duty. Id. at ¶ 9, 12. Three Lamb McErlane partners were copied on the letter. Compl. at ¶ 55.

In November 2015, the beneficiaries sought sanctions, asking the court to find the executor and Lamb McErlane "jointly and severally responsible for reimbursing the Estate for any ultimate net loss it has suffered as a result of [the tax] penalty." Id. at ¶ 14, Ex. C at ¶ 3.

In a December 2015 Order, the court precluded the beneficiaries "from introducing evidence at trial that would be offered for the purpose of establishing a 'claim' against Lamb McErlane . . . for alleged negligence or any other affirmative recovery against [Lamb McErlane] for damage allegedly caused to the Estate." Def. Br. (doc. 20-1), Ex. 2 ("Dec. 2015 Order") at 17. Although the beneficiaries lacked standing to bring a professional negligence claim against Lamb McErlane, the court explained, they were "permitted to object to the reasonableness of the fees charged to the Estate—a challenge they have made from the outset." Id. at 18. The court had "the power, obligation and discretion to determine the reasonableness of fees charged to an Estate—whether paid out in advance of court approval or when seeking court approval." Id.

2

In June 2016, Allied World agreed to insure Lamb McErlane against professional liability claims made between June 20, 2016 and June 20, 2017.[1]  Compl. at ¶ 26, Ex. E ("Policy").

In March 2017, the court concluded Lamb McErlane and the executor had breached their fiduciary duties by mishandling the tax process, and held them jointly and severally liable for the estate's $557,001 net loss.  Compl., Ex. D ("Mar. 2017 Adjud.") at 203–04.

III.   Discussion

Allied World argues it is not required to insure Lamb McErlane for the $557,001 judgment because the claim was made against Lamb McErlane when the beneficiaries submitted their May 2015 letter to the court—13 months before Allied World agreed to insure Lamb McErlane.  Pl. Br. (doc. 15-1) at 8.

   A.   Contract Interpretation

Under Pennsylvania law, which governs this policy, insurance contract interpretation is a question of law.  Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011).  I must consider the policy as a whole and give effect to the plain language of the written agreement.  Id.  Where the policy language is ambiguous, I must construe it in favor of the insured.  Ramara, Inc. v. Westfield Ins. Co, 814 F.3d 660, 673–74 (3d Cir. 2016); Pa. Nat'l Mut. Cas. Ins. Co. v. St. John, 106 A.3d 1, 14 (Pa. 2014).  "[A] provision is ambiguous only if reasonable people could, in the context of the entire policy, fairly ascribe different meanings to it."  Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999).

The policy covers Lamb McErlane for claims made during the one-year period beginning June 20, 2016.  See Policy at 2.  "Claim" is defined as "(1) any written notice or demand for monetary relief . . . [or] (2) any civil proceeding in a court of law . . . made to or against any

---

[1]   The pleadings do not discuss Lamb's prior insurance provider.

Insured seeking to hold such Insured responsible for any Wrongful Act." Id. at 14. "Wrongful act" includes "any actual or alleged act, error or omission committed by any Insured, solely in the performance of or failure to perform Legal Services." Id. at 18. "A Claim will be deemed to have been first made when an Insured receives written notice of the Claim." Id.

Allied World argues the May 2015 letter meets the unambiguous contractual definition of a claim because it provided written notice that the beneficiaries sought monetary relief from Lamb McErlane for harm caused by its negligent performance of legal services. Pl. Br. at 9–10. Allied World contends such notice was reasserted in the beneficiaries' November 2015 motion for sanctions. Id. at 10 n.17.

Lamb McErlane counters that the May 2015 letter was "a simple offer of proof," not "a 'notice' or 'demand' for monetary relief," because the beneficiaries were not parties to the underlying estate proceedings and therefore lacked standing to assert a claim against Lamb McErlane. Def. Br. at 5–6, Ex. 2. In the alternative, Lamb McErlane claims there are disputed issues of material fact, which preclude judgment on the pleadings. Id. at 6.

B. The May 2015 Letter

Lamb McErlane's reliance on the beneficiaries' inability to assert an affirmative claim against it is misplaced. The firm's argument is an attempt to rewrite the policy to permit a claim only after an insured is faced with a viable cause of action in a formal legal proceeding. Although the beneficiaries were precluded from bringing a malpractice claim directly against Lamb McErlane in the estate proceedings, they were permitted to object to excessive legal fees already paid by the estate. They not only did so, they notified Lamb McErlane of their objections to Lamb McErlane's legal work.

"[A]n executor must account for his administration of a Pennsylvania estate to the beneficiaries and the court in accordance with statute and the rules of the Orphans' Court." Mar. 2017 Adjud. at 144–145. The initial accounts showed the executor paid himself and Lamb McErlane "huge amounts of fees" from the estate. See May 2015 Letter at ¶ 6. The beneficiaries objected to the payments made in connection with the "tax fiasco," asserting in the May 2015 letter that the "ultimate net loss is in excess of $500,000 and should be charged to [the executor] and Lamb [McErlane]." Id. at ¶¶ 8–9. As the court explained, the beneficiaries could "seek a disallowance" of "inappropriate or unreasonable" fees. See Dec. 2015 Order at 18.

As the state court acknowledged, the beneficiaries sought reimbursement for unreasonable fees paid out of the estate without judicial preapproval. Id. at 20 ("The ultimate question before the court presented by this motion is: who is responsible for paying back to the Estate fees, attorney or otherwise, that have been paid out prior to court approval and which the court may later determine to be unreasonable?"). Although Lamb McErlane contends the court was authorized to surcharge only the executor, the Order cites Pennsylvania case law in which courts disallowed unreasonable or excessive attorney fees and ordered executor's counsel to refund fees already paid. Id.

Because the May 2015 letter provided written notice that the beneficiaries sought to make Lamb McErlane return payments received for improperly performed legal services, it meets the policy's unambiguous definition of a claim. Lamb McErlane had written notice of the claim against it before it was insured by Allied World in June 2016. Similarly, the November 2015 motion for sanctions reaffirmed the claim because it requested reimbursement from Lamb McErlane for losses caused by its negligence. The claim against Lamb McErlane was granted, not initiated, in the March 2017 Adjudication. Although Lamb McErlane contends the

Adjudication "improperly" imposed a judgment against it "for an alleged violation of a standard of care and an alleged negligent act," the judgment merely resolved the account Objections.

C. Disputed Issues of Material Fact

Lamb McErlane fails to identify disputed issues of material fact that would render judgment on the pleadings improper. "By way of example," Lamb McErlane cites the beneficiaries' concessions that "they had not asserted any professional negligence claims against Lamb McErlane, they did not and could not have brought any claims, including professional negligence claims, against Lamb McErlane," and they were not seeking "affirmative recovery from Lamb McErlane for damages caused to the Estate." Def. Br. at 6.

Such disputes are immaterial. Because the May 2015 letter satisfies the policy's plain-language definition of a claim, and the beneficiaries had the right to object to the initial accounts implicating Lamb McErlane's legal work, it is irrelevant that the beneficiaries lacked standing to assert an affirmative malpractice claim against Lamb McErlane. In the March 2017 Adjudication, the court agreed the estate should not have to cover costs attributable solely to Lamb McErlane's negligence. Because the executor had already paid those improper fees, the court ordered the executor or Lamb McErlane to reimburse the estate. Any disagreement about the precise legal mechanism to pursue a professional malpractice claim is not material to the disputed coverage issue here.

IV. Conclusion

Because the claim for which Lamb McErlane seeks coverage was first made in the May 2015 letter, it arose before the Allied World policy period began 11 months later in June 2016. I will grant Allied World's motion for judgment on the pleadings.

An appropriate Order follows.